## LAWSON *v.* WORMS.

Advanced freight can be recovered back by the charterer, in case of the loss of the ship or non-performance of the voyage, whether by the fault of the master or not.

And this is the rule in England, as well as in this country.

It follows that where, by the terms of the charter party, made in England, the charterer agreed to insure the advanced freight, at the ship's expense, it being deducted from the freight money paid, but failed to do so until long after the risk had commenced, by reason whereof the owner was compelled to insure for his own protection, the owner can recover of the charterer the amount by him paid for insurance.

In such a case, the owner is the party for whose benefit the advance freight is insured, as he is liable to refund it, on loss of the ship; and, having been compelled to pay the insurance premium twice, by the default of the charterer, he is entitled to recover back one of the payments.

APPEAL from the Superior Court of the City of San Francisco.

This was an action brought by the plaintiffs, owners of the ship "American," to recover, among other things, from the defendant, charterer of that ship for a voyage from Cardiff, Wales, to San Francisco, the sum of $2190, being the amount of premium paid by plaintiffs for insurance on freight, effected by them, and which, as they aver, the defendant neglected to effect, as bound to do under the following clause of the charter party, entered into between the parties at Cardiff: "The freight to be paid by good and approved bills on London, at six months' date from date of sailing, less cost of insurance, to be effected by the charterer, at ship's expense, or in cash, under discount equal thereto, at charterer's option; less, in either case, £800, which is to be paid on delivery of cargo, in cash, at current rates of exchange."

This freight was to be paid by the defendant for the transportation of a cargo of coal from Cardiff to San Francisco; and the averment of the complaint is that the defendant, in violation of his agreement, neglected to insure, thereby compelling plaintiffs to do so.

The case was tried, by stipulation, before a referee, whose decision was to be entered as the judgment of the Court. There were other demands made in the complaint, which are not, however, referred to on the appeal.

The referee found the fact to be, "that the defendant did not effect an insurance upon the advance freight, according to an agreement contained in the charter party; that he effected no insurance thereon whatever until many days after the American had sailed, and the risk

24

had commenced, and the defendant had been notified thereof and requested to effect such insurance; and not until after the plaintiffs, upon such default of the defendant, had effected an insurance for their own protection, and had duly notified the defendant thereof; that after the commencement of the risk, to wit : on the 20th day of December, 1853, and the default of the defendant therein, the plaintiffs did effect an insurance upon the advance freight, at an expense, in the payment of the premium and other necessary charges, of £438, as charged in the complaint."

The referee finds that the defendant did violate his agreement, contained in the charter party, in the failure to insure, and finds that there is due by defendant to plaintiffs the sum of $2190, upon the cost of insurance, for which plaintiffs are entitled to have judgment. Judgment was entered in accordance with the report of the referee. Defendant moved for a new trial, which was denied, and defendant appealed.

*H. P. Hepburn* for Appellant.

The first question is whether under the clause of the charter party, which is quoted above, the defendant was bound to insure for the plaintiffs?

The referee in his finding *assumes* this proposition; that is, that the defendant was bound by the charter party to insure for account of the plaintiffs; whereas, as the appellant contends, it is the whole question at issue.

This charter party was entered into in England, and although by the language of the clause quoted, " the freight " is to be insured, yet from the averment of the plaintiff's complaint, and from all the evidence and acts of the parties, it is very evident that this was understood, and considered to mean the *advance freight,* and nothing else.

The stipulation of the policy then, as ascertained by the acts of both the parties, is, that the charterer shall advance the freight, but that the ship owners shall pay for the insurance on the advance.

Which party, then, the ship owner or the charterer, is it that has an interest in having this advance insured ? That is to say, for whose account and benefit was the clause of the charter party in regard to insurance intended ?

Now what interest had the ship owners, these plaintiffs, in this advance ? None whatever, and therefore no interest in having it insured. The general rule in regard to the payment of freight is that it depends on the performance of the voyage, and if the voyage fails, the freight is not earned. The reason is, that " the consideration for payment, which was " the carriage of the goods, has failed." 3 Kent, p. 287.

And for this reason, the foreign jurists have even permitted freight paid in advance to be recovered back ; and there are some American dicta to the same effect. But in England, where this charter party was entered into, the law is different. There, the rule is that advanced freight, (by which is meant freight which is payable *at all events,* and

whether the voyage is performed or not,) can in no case be recovered back, unless the charter party contains an express stipulation to that effect. " Whenever there is an express stipulation that the party who is to be entitled to freight, shall be paid any portion of it in advance, there ought also to be an express stipulation that the party paying it shall be entitled to recover it back, if freight be not earned, if such be the intention of the parties. For without some provision of that sort how are we to raise a new implied contract to that effect? Per Bailey, J., in Kendall *v.* De Silvata, 4 Maule and Selwyn, 45. See 3 Kent, 287; Abbott on Shipping, 501-2-3-4.

At whose risk, then, is the advance? Not at the risk. of the ship owners, for they have got it in their pockets, and can never be called on to repay it. They have insisted on this in their charter party. The charterer consented, but he said, though I will pay you the freight in advance, you must insure me against the loss of this advance, in case the ship goes down. *I will effect the insurance myself, but you must pay for it.*

Indeed, the loss would not only have fallen on the party advancing the freight, that is the defendant, but he is the only person who has an insurable interest. " The charterer of a ship who by the terms of a charter party, has advanced money in part payment of freight, has an insurable interest in the money so advanced; for as such money could not in case of the loss of the ship, be recovered back by the charterer from the owner, the loss of the ship would involve the loss of the money advanced; but in order to give him such an insurable interest, it must distinctly appear by explicit words to that effect in the charter party, that the money advanced is in part payment of the freight." 1 Arnold on In., 266.

" By *fret aquis* may, it seems, be understood, either sums paid in advance by the charterer, or his agents, as a part of the freight; or freight which, by the terms of the charter party, is payable at all events. But in these cases *the charterer, and not the ship-owner, can alone insure, as he alone runs the risk of loss.* 1 Arnold on In., 206; ibid, 207; ibid, 244, 245.

*Hoge* for Respondent.

It is admitted that the appellant's whole case rests upon the soundness of the proposition, that " freight paid in advance cannot be recovered back in any case."

The decision of our own Supreme Court in the case of Reina *v.* Cross, decided at the January term, 1856, and not yet reported, sets this question at rest, and is conclusive in favor of the respondent, unless the case at bar can be distinguished from the case of Reina *v.* Cross. This is attempted to be done, and upon this ground : that the particular contract of affreightment now before the Court is an English contract, to be construed by English law and English decisions, and that according to the English decisions, *freight· paid in advance* cannot be recovered back upon the non-performance of the voyage.

The respondent denies both these propositions. In the first place, this is not an English contract, but a marine contract, to be construed, not by English law, but by the maritime law, the general law of nations; in the language of Lord Mansfield, in the celebrated case of Luke v. Lyde, 2 Burr, 882, that law which obtains the same among all nations and in all times. The maritime contract of affreightment contemplates its performance, not in any particular country, but in every port and in every sea. To give it locality, to construe it by the mere local laws of the place of its accidental signature, would be destructive of the great interests of commerce. The marine law of nations is to be looked to for the validity, nature, obligation and interpretation of the maritime contract.

In construing and enforcing these contracts, Courts never inquire into the local law.

The authorities of all nations are looked into, and the weight of decision in accordance with principle, determines the question. Upon the second branch of the appellant's proposition, it is contended that upon an examination of the English decisions, it will be found that they do not essentially differ from the American and Continental decisions upon the subject of "advance freight." On the contrary, the general doctrine of the maritime law, that "freight is never earned until complete delivery, and if prepaid, must be refunded, unless expressly stipulated to the contrary," is admitted by English writers and judges; yet in some cases they fritter it away upon very nice distinctions.

The ground they go upon is, that it is competent for the parties by their own contract to vary the general law.

The decision in each case. is in effect, that the particular language used amounts to a stipulation that the freight paid should be an absolute payment, and to be retained at all events, and irrespective of the performance of the contract.

These cases, therefore, establish no general usage and practice, calling upon the Court to interpret the particular contract with reference to the fact of such usage, upon the presumption that such fact is known to the contracting parties, and that they contract in conformity thereto, and must be supposed to have used the particular language which they did use, with reference to the particular meaning, which usage had thus attached to the words.

In the case of Mashiter v. Buller, 1 Campbell, 84, it was decided, that although freight should be made payable by the shipper *on the shipment of the goods*, it is not merely on that account earned without a performance of the voyage. The vessel being lost, Lord Ellenborough said that if the defendants had paid the freight upon the shipment of the goods, they might have recovered every penny of it back again.

Andrews v. Merehaus, 5 Taunton, and Blakey v. Dixon, 2 Bos. & Pul., 321, was decided on the distinction that the money was to be paid for *receiving goods on board to be carried, and not for freight to be earned.* And in the former case, Chief Justice Gibbs left it to the jury to say what the parties meant.

In the case of De Silvale v. Kendall, 4 M. & S., 37, so much relied upon on the other side, the Court treats the particular charter party as *an express agreement to pay a part of the freight, not to be returned in case of loss.*

Lord Tenterden, in the case of Mansfield v. Maitland, 4 B. & A., in remarking upon the case, said: "The case of De Silvale v. Kendall turned upon the particular words of the instrument, which was studiously framed so as to make the freighter lose the money advanced by him, unless the owner reaped the benefit of the ship's coming home safe;" and as his lordship said in the case before him, so we say in our case, "the present charter party is in a very different form."

On the main question, upon almost the same facts, the last case was decided precisely the other way from De Silvale v. Kendall.

The case of De Silvale v. Kendall proceeded upon the force of a *dictum* in an anonymous case, in 2 Shower, which Chief Justice Kent, in Watson v. Duyckink, 3 Johnson, and Mr. Justice Story, in Pitman v. Hooper, 3 Sumner, 65, 66, pronounce unworthy of reliance.

So it would be difficult to reconcile the decision in Gillen v. Mundey, 2 B. & Ald., 17, with that in De Silvale v. Kendall, when we examine the provisions of the charter party involved in that case, and yet the Court held that no freight was due until the voyage was performed, etc. The doctrine of the appellant, when applied to the case under discussion, goes the whole length of contending that *" the mere payment of freight in advance* amounts to a contract that it shall not be recoverable back in the event of loss," which is at once to destroy the acknowledged general rule. That general rule may be varied by express contract. It would be in vain that the Court would look into the charter party and bill of lading, or into the conduct of the parties in this case, to find the evidence of any such contract.

The American and Continental authorities are uniformly opposed to the doctrine of the appellants. The Court will find the whole subject very thoroughly discussed in the authorities now cited. Watson v. Duyckink, 3 Johnson, 338; Griggs v. Austin, 3 Pickering, 20; Pitman v. Hooper, 3 Sumner, 66; 9 Johnson, 212, note from Rollins; Howland v. Brig Lavinia, 1 Peters' Adm. Decis., 126; Reina v. Cross, 5 Cal., Jan. term, and the authorities cited therein.

In consequence of the appellant's violation of his contract, the respondents have been compelled to pay two premiums of insurance, instead of one, and when he attempts to recover it back, he is told : " You had no authority to insure, and you had no insurable interest;" both propositions are false in law.

In Tasker v. Scott, 6 Taunton, 234, Chief Justice Gibbs uses this language : " Undoubtedly, if an insurance were effected by order of a person who had an interest, that although the insurance were void, yet that he who had effected it might recover back the premium from him by whose order he had done it."

The respondents had an interest, which they had a right to insure.

Because under the contract, if the ship-owner had failed to deliver

the goods according to the terms of his contract and bill of lading, he would have been liable to refund the freight paid.

Because the ship-owner would have been liable to refund the freight advanced, if a loss had occurred occasioned by the barratry of the master and crew.

Because the freight advanced would have been bound to contribute to a general average and to salvage.

The opinion of the Court was delivered by Mr. Justice HEYDEN-FELDT.   Mr. Justice TERRY concurred.

The question in this record turns upon the point, whether advanced freight can be recovered back by the charterer in case of the loss of the ship, or non-performance of the voyage otherwise than by the fault of the master.

In the case of Reina *v*. Cross, at the January term, 1856, we decided that freight paid in advance could be recovered back in case of the loss of the ship, and relied upon the cases of Griggs *v*. Austin, 3 Pick.; and Watson *v*. Duyckinck, 3 Johns.   It is not disputed that this is the American and continental European doctrine; but it is insisted that the contrary is the rule in England, and that as the contract was made in that kingdom, the law which prevails there must govern this case. Upon an examination of the English cases, I do not find sufficient authority to warrant the conclusion that the rule there would be different from that of the rest of the world.   Indeed, as was remarked by Chief J. Kent, in Watson *v*. Duyckinck, " the English books are almost silent on the subject, and afford little or no information."

The principal cases (if not all) which have been decided in England, are stated and reviewed in Abbot on Shipping, 405 *et seq.*   It appears in nearly all of them, the decision against the recovery of the freight advanced rests upon the peculiar language of the contract, which is construed to be a stipulation to the effect that the advance was to be paid at all events, and in some of the cases it is treated as something differing from freight money.   The only case which seems without qualification to decide against the recovery, is a case in 2 Shower, 283; but that is an anonymous case, and Judge Kent, in Watson *v*. Duyckinck, calls it " a *dictum* of Mr. Chief Justice Saunders," and adds, " but I do not place reliance upon that very imperfect report."   There seems to be a contradiction between the cases of De Silvale *v*. Kendal, 4 M. & S., and that of Mansfield *v*. Maitland, 4 B. & A.   But in the latter case, Lord Tenterden remarked of the former, that it " turned upon the particular words of the instrument, which was studiously framed so as to make the freighter lose the money advanced by him, unless the owner reaped the benefit by the ship's coming home safe." It is true, that afterwards, in the case of Saunders *v*. Drew, 3 B. and Ad., 445, the same Judge cites the case in 2 Shower, and says, " this is the ground of the doctrine which was acted upon in De Silvale *v*. Kendal."   But in looking into the case of Saunders *v*. Drew, it will be seen that this remark was mere *obiter dictum*, and entirely inapplicable

Lawson v. Worms.

to the facts of that case, because there was a most explicit stipulation for the non-return of the advanced payments.

When, therefore, this careless and unnecessary *dictum* is weighed against what his lordship said in Mansfield *v.* Maitland, it will be readily seen that the latter is alone entitled to be considered as authority, and fully sustains the rule which everywhere else prevails.

The best reason is also on this side of the question, and places it in complete analogy to the general principles of law which govern in cases of contract. In Griggs *v.* Austin, Chief Justice Parker says : " It is certainly a clear principle of the common law, that when money is paid, or a promise made by one party, in contemplation of some act to be done by the other, which is the sole consideration of the payment or promise, and the thing stipulated to be done is not performed, the money may be recovered back, or the promise founded on such consideration may be avoided between the parties to the contract. Exceptions may be made by a stipulation of the parties, but without such exceptions the rule seems to be universal."

I will only add, that I can see no reason why a rule should be applied to contracts of affreightment differing from the one that governs all other contracts which involve mutual obligations, responsibilities and duties, and therefore I feel full confidence that the conclusion I have attained forms a correct exposition of the common law. Considering it as such, I must hold it to be the rule which prevails in England, and it must consequently control the decision of this case.

It follows that as the advanced freight can be recovered by the freighter in case of the loss of the ship, the ship-owner was the party for whose benefit the freight was insured ; and that having been compelled to pay the insurance premium twice on account of the default of the charterer, he is entitled to recover back one of the payments. There might be a question whether he should have brought this form of action ; whether in fact his action should not have been rather for so much freight unpaid ; but as this question was not raised by the parties, and is not presented by the record, and as the recovery here will do full justice to the plaintiff, and hereafter protect the defendant, it is not a proper matter for our consideration.

Judgment affirmed.

Mr. Chief Justice Murray.—This was an action in the Court below to recover, among other things, the amount of premium upon insurance of freight paid by the plaintiffs. The defendant was the charterer of a vessel for a voyage from Cardiff to San Francisco. By the terms of the charter party, it was stipulated that " the freight should be paid in good and approved bills on London at six months date from date of sailing, less cost of insurance to be effected by the charterer at ship's expense, or, etc." After the vessel had sailed, the plaintiffs, owners of the vessel, effected an insurance upon the advanced freight, and now seek to recover the amount paid, from the defendant, on the ground that it was his duty to have insured, and by neglecting to do

so until some time after the vessel had sailed and the risk had commenced, they were forced by such negligence to protect themselves.

This controversy is much simplified by the fact that the insurance was effected upon the advanced freight paid by defendant to the plaintiff, as appears from the plaintiffs' " Policy of Insurance."

This being admitted, the question naturally suggests itself, whether the stipulation in the charter party was for the benefit of the plaintiffs under that agreement.

The general rule of law on this subject, both in the United States and among commercial nations, is that freight paid in advance may be recovered back if the voyage is not completed. It is put upon the ground, that the carriage of the goods, which was the consideration of the payment, has failed.

In England, however, where the contract under consideration was executed, a different rule has been established, and it is held that freight pre-paid cannot be recovered unless the parties expressly stipulated to that effect. 3 Kent, 287; Sanders *v.* Drew, 3 Barnwell & Adolphus, 446.

Regarding this as the well settled rule of the English Courts upon this question, it follows that the stipulation in the charter party was intended for the defendant's benefit, and not for the benefit of the plaintiffs or owners. The charterer of a ship, who has advanced money under the terms of the charter party, in part payment of the freight, has an insurable interest in the money so advanced; for as such money could not, in case of the loss of the ship, be recovered back by the charterer from the owners, the loss of the ship would involve the loss of the money advanced. 1 Arnould on insurance, 266, and the cases there cited.

From this it is apparent that the plaintiffs had no insurable interest in the advanced freight, but that the charterer alone could insure the same to cover his risk of loss or damage to the vessel.

The parties are supposed to have contracted with full knowledge of the law upon this subject, and I can come to no other conclusion from an examination of the charter party as well as the policy of insurance afterwards effected by the plaintiffs, that the payment of freight in advance was the consideration upon the part of the ship-owners for the amount of the insurance which they contracted should be at the ship's expense, and that the clause was inserted for the sole benefit of the charterer, and that plaintiffs could not charge him in this manner.

Some preliminary objections have been urged as to the right of an appeal in this case. The stipulation to refer this case upon examination cannot be considered as a submission to an arbitration, but a reference under the statute, neither will the objection prevail that two distinct causes, pending in different Courts are submitted. Inasmuch as the stipulation is a distinct and separate submission of each case respectively and not of both jointly to be tried as one case. The error complained of is patent upon the report of the referee, and a new trial should be granted.

On the first argument I prepared this opinion, which I see no good reason to recede from, believing it to be correct on the authorities, and therefore give it as my dissenting opinion.